UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RICHARD FALK,

        Plaintiff,

v.

AETNA LIFE INSURANCE CO., *et al.*,

        Defendants.

Civil Action No. 19-00434 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Aetna Life Insurance Co., Aetna Resources, LLC, and Aetna, Inc.'s (collectively, "Defendants" or "Employer") Motion to Compel Arbitration. (ECF No. 4.) Plaintiff Richard Falk ("Plaintiff") opposed (ECF No. 7), and Defendants replied (ECF No. 8). Plaintiff subsequently filed a Motion for Leave to File Sur-Reply. (ECF No. 9.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Compel Arbitration is granted.

**I.    Background**

This case arises out of Plaintiff's action against his former employer for wrongful termination. (Defs.' Notice of Removal, Ex. A ("Complaint"), ECF No. 1-3.) Plaintiff alleges Defendants terminated his employment because of his age and disability in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623, *et seq.* ("ADEA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 1201, *et seq.* ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). (*Id.*)

On March 3, 2003, Defendants announced to their employees via an e-mail message that they were rolling out optional grants under their stock option program ("Stock Incentive Plan"). (Decl. of Barbara Waters ("Waters Decl.") ¶ 4, Ex. C ("March 2003 Email"), ECF No. 4-2.) To accept these optional grants, employees had to agree to mandatory binding arbitration of employment-related legal disputes. (*Id.*) Employee participation, nevertheless, "was voluntary and employees were free to decline the grants and continue their employment without any adverse consequences." (Waters Decl. ¶ 3.) On April 4, 2003, Defendants sent another e-mail message to their employees providing instructions regarding the online acceptance process. (Waters Decl. ¶ 4, Ex. D ("April 2003 Email"), ECF No. 4-2). Each recipient was instructed to review information about Defendants' Employment Dispute Arbitration Program. (*Id.*) Employees were further informed that "[t]o access [their] personal grant information and accept the grant, [they would] need to log on to the UBS PaineWebber website at http://www.cefs.ubspainewebber.com/aet" and would "need [their] Social Security Number (without hyphens) and PIN to log on." (*Id.*)

Defendants' records show that on April 4, 2003 and May 4, 2004, Plaintiff electronically accepted the stock option awards through the UBS PaineWebber website and agreed to be bound by the terms of the Stock Incentive Plan, including the Arbitration Provision. (Waters Decl. ¶ 7, Ex. G ("Grant Acceptance and Exercise Reprints"), ECF No. 4-2.) The Arbitration Provision, found under Article VIII of the Stock Incentive Plan, states in pertinent part:

> **MANDATORY BINDING ARBITRATION OF EMPLOYMENT DISPUTES**
>
> (a) As consideration for the grant of the Option, except as otherwise specified, the Grantee [Plaintiff] and the Company [Defendants] will resolve employment-related legal disputes in accordance with the Aetna [Defendants] Employment Dispute Arbitration Program set forth below.

2

> (b) Grantee [Plaintiff] understands that in arbitration, an arbitrator instead of a judge or jury resolves the dispute and the decision of the arbitrator is final and binding. Grantee [Plaintiff] also understands that WITH RESPECT TO CLAIMS SUBJECT TO THE ARBITRATION REQUIREMENT, ARBITRATION REPLACES THE RIGHT OF THE GRANTEE [Plaintiff] AND THE COMPANY [Defendants] TO SUE OR PARTICIPATE IN A LAWSUIT.
>
> (c) This shall apply to claims brought on or after the date the Grantee [Plaintiff] becomes subject to this Program, even if the facts and circumstances relating to the claim occurred prior to that date. Grantee [Plaintiff] IS ADVISED TO, AND MAY TAKE THE OPPORTUNITY TO, OBTAIN LEGAL ADVICE BEFORE FINAL ACCEPTANCE OF THIS OFFER.

(Defs.' Reply Br. 2, Ex. B ("Stock Incentive Plan ("SIP") Agreement"), ECF No. 8-3.) The Arbitration Provision also included a discovery provision (the "Discovery Provision"), which provides:

> The employee [Plaintiff] and the Company [Defendants] shall be entitled to conduct limited pre-hearing discovery. Each may take the deposition of one person and anyone designated by the other as an expert witness . . . . Each party also has the right to submit one set of ten written questions (including subparts) to the other party, which must be answered under oath, and to request and obtain all documents on which the other party relies in support of its answers to the written questions. Additional discovery may be permitted by the arbitrator upon a showing that it is necessary for that party to have a fair opportunity to present a claim or defense.

(*Id.*)

In the instant Motion, Defendants move to compel arbitration pursuant to Plaintiff's acceptance of the Stock Incentive Plan Agreement, which contains the above-quoted Arbitration Provision. (Defs.' Moving Br. 1, ECF No. 4-1.) Plaintiff opposes, arguing the Arbitration Provision is invalid. (Pl.'s Opp'n Br. 4, ECF No. 7.)

## II. <u>Legal Standard</u>

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"), to thwart "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563

3

U.S. 333, 339 (2011). The FAA creates a body of "federal substantive law" establishing the duty to respect agreements to arbitrate. *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009). The FAA declares that "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When there is a contract between the parties that provides for arbitration, there is "an emphatic federal policy in favor of arbitral dispute resolution." *Hoover v. Sears Holding Co.*, No. 16-4520, 2017 WL 2577572, at *1 (D.N.J. June 14, 2017) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Raynor v. Verizon Wireless, LLC*, No. 15-5914, 2016 WL 1626020, at *2 (D.N.J. Apr. 25, 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

"[I]n deciding whether a party may be compelled to arbitrate under the FAA," the Court must determine: "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quotation marks omitted) (quoting *Century Indem. Co.*, 584 F.3d at 527).

In determining whether a valid arbitration agreement exists, federal courts are to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'" *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (citation omitted).

4

Courts have recognized that a contract may be either procedurally or substantively unconscionable. *Pyo v. Wicked Fashions, Inc.*, No. 09-2322, 2010 WL 1380982, at *4 (D.N.J. Mar. 31, 2010). "Procedural unconscionability refers to . . . 'the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.'" *Zimmer v. Cooperneff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008) (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). "Substantive unconscionability looks to whether the arbitration provision unreasonably favors the party asserting it." *Id.* A court finding either form of unconscionability has broad discretion over the remedy. *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 919 (N.J. Super. Ct. Ch. Div. 2002). "[T]he court may refuse to enforce the entire agreement, strike the unconscionable provision and enforce the remainder of the agreement, or limit the application of the unconscionable provision as to avoid an unconscionable result." *Id.*; N.J. Stat. Ann. § 12A:2-302.

### III. The Parties' Arguments

In opposition to Defendants' Motion, Plaintiff argues the following: (1) the FAA violates the Seventh Amendment of the United States Constitution;[1] (2) there is no valid or enforceable agreement to arbitrate under New Jersey law because Plaintiff did not sign or otherwise explicitly indicate his assent to the Arbitration Provision; (3) the Arbitration Provision is procedurally unconscionable because the arbitration agreement is a contract of adhesion; and (4) the Arbitration Provision is substantively unconscionable because it mandates submission of Plaintiff's claims to an unfair and biased arbitral forum and it excessively limits discovery. (Pl.'s Opp'n Br. 4-20, ECF No. 7.) Plaintiff also states that if the Court does not find the Arbitration Provision invalid

---

[1] Plaintiff's assertion that the FAA violates the Seventh Amendment fails in light of substantial precedent stating otherwise. *See, e.g., Concepcion*, 563 U.S. at 339.

5

on its face, the Court should allow him to conduct limited discovery to determine the validity and enforceability of the Arbitration Provision. (*Id.*)

Lastly, in his proposed sur-reply, Plaintiff challenges the admissibility of Lisa Gustavsen's declaration. (Pl.'s Mot. to Sur-Reply 1, ECF No. 9-2.) Plaintiff contends Ms. Gustavsen's declaration, which describes the acceptance process and contents of the UBS website, is inadmissible hearsay because Defendants do not provide "evidence to show that Plaintiff, specifically, accepted the terms of the SIP [Agreement] by logging into the UBS Website, scrolling through the SIP [Agreement's] terms and conditions (including the Arbitration Provision), clicking 'Accept,' and then verifying his selection by clicking 'Yes' nor provide a copy of the webpage itself." (*Id.* at 2-3.)[2]

In their reply brief, Defendants maintain that New Jersey law binds Plaintiff to the terms of the SIP Agreement because he affirmatively accepted the terms and conditions of the SIP Agreement, including the Arbitration Provision, by scrolling through the full text of the SIP

---

[2] The Court finds Plaintiff's inadmissible hearsay arguments lack merit. Defendants have presented sufficient evidence demonstrating that no employee could have purchased the stock options without first accepting the SIP Agreement. (Waters Decl.; March 2003 Email; April 2003 Email & Gustavsen Decl.). Furthermore, Defendants attached a printout from UBS Financial Services, Inc. of what appears to be Plaintiff's acceptance record. (Grant Acceptance and Exercise Reprint.) The printout record lists Plaintiff's name twice under the words "Response: Accepted," and further lists the number of stock options and dates on which they were accepted. (*Id.*) The contention that Ms. Gustavsen does not have personal knowledge of whether Plaintiff specifically accepted the agreement is irrelevant because Plaintiff himself admits that he was granted the stock options, but does not recall reading the Arbitration Provision. (Pl.'s Opp'n Br. 2.) *See Horowitz v. AT&T Inc.*, No. 17-4827, 2019 WL 77331, at *9 (D.N.J. Jan. 2, 2019) (enforcing arbitration agreement against plaintiffs who claimed to have no recollection of opening or viewing the agreement as company records showed plaintiffs accessed the webpage containing the agreement). Ms. Gustavsen has sufficient personal knowledge stating that she knows the procedures by which acceptance could occur. *See Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (determining "information in the declaration [was] within the declarant['s] personal knowledge"); *see also Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (explaining a statement by the party's agent or servant concerning a matter within the scope of the agency or employment is not hearsay under Federal Rule of Evidence 801(d)(2)).

6

Agreement and clicking "Accept" and further verifying his acceptance by clicking "Yes." (Defs.' Reply Br. 5, ECF No. 8.) Defendants contend they do not have to submit evidence of Plaintiff's individual acceptance because there is no way Plaintiff could have accepted the stock options without first clicking "Accept." (*Id.* at 4 ("The UBS website does not allow individuals to exercise a stock option *unless* it has been accepted . . . .").)

Furthermore, Defendants contend the Arbitration Provision is not procedurally unconscionable. (*Id.* at 5.) Defendants argue the SIP Agreement is not a contract of adhesion because Plaintiff was not required to agree to it and had ample opportunity to decline it. (*Id.* at 5-9 ("Hundreds of Aetna employees chose to decline stock options in 2003 and 2004, and thus were not bound by the terms of the SIP [Agreement] or its Arbitration Provision.").) Lastly, Defendants argue the Arbitration Provision is not substantively unconscionable because Plaintiff still retains access to all of his rights and remedies in arbitration and the Supreme Court has held that "limitations on discovery do not necessarily render an arbitration provision invalid." (*Id.* at 7-8 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)).)

## IV. Discussion

Plaintiff does not argue his claims are outside the scope of the Agreement, and the Court, therefore, need only decide whether the Arbitration Provision is valid. Plaintiff argues the Arbitration Provision is invalid on the grounds of both procedural and substantive unconscionability.

### A. Clickwrap Agreements are Valid and Enforceable Under New Jersey Law

To determine whether parties have agreed to arbitrate, courts must apply general state contract law principles. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). New Jersey law does not require a physical signature for there to be a valid agreement and courts will bind parties to arbitration agreements entered into online, such as via

"clickwrap" agreements. *Davis v. Dell*, No. 07-630, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007), *aff'd*, No. 07-630, 2008 WL 3843837 (D.N.J. Aug. 15, 2008) ("[W]hen a party uses his [or her] computer to click on a button signifying his [or her] acceptance of terms and conditions in connection with an online transaction, he [or she] thereby manifests his [or her] assent to an electronic agreement."); *see also Essex v. Children's Place, Inc.*, No. 15-5621, 2017 WL 6000347, at *6 (D.N.J. Dec. 4, 2017) (finding arbitration agreement signed electronically through online portal valid); *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 665 (D.N.J. 2017) (compelling arbitration where plaintiff clicked "I agree" without reading the contents of the agreement).

Here, Plaintiff argues he neither signed nor agreed to be bound by the Arbitration Provision. (Pl.'s Opp'n Br. 5.) Defendants, however, have provided sufficient evidence illustrating that acceptance of the terms of the SIP Agreement through the UBS PaineWebber website was a "necessary precondition to [Plaintiff's] receipt of stock options in each year." (Defs.' Reply Br. 2.) Employees electing to receive the optional grants had to follow a precise acceptance process on the UBS website, which required scrolling through the full text of the SIP Agreement and clicking "Accept." (*Id.* at 3-4.) If an employee did not accept the stock option grant and the SIP Agreement "by the deadline in each year, the grant would have expired and been declined." (*Id.*)

Defendants' exhibits also demonstrate that Plaintiff received stock option grants in 2003 and 2004 and that Plaintiff later exercised those stock options. (Grant Acceptance and Exercise Reprints.) In light of New Jersey law binding individuals to their electronically signed agreements and the evidence Defendants provided, the Court finds that a valid agreement to arbitrate was formed, and further notes the well-established principle that in the absence of fraud, an individual entering into an agreement is assumed to have read and understood its terms. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221-22 (3d Cir. 2008).

### B. Whether the Arbitration Provision is Procedurally Unconscionable

A court may invalidate an arbitration agreement based on a contractual defense such as procedural unconscionability. *Parilla*, 368 F.3d at 276. "A procedurally unconscionable contract is one marked by 'a lack of meaningful choice in the acceptance of the challenged provision.'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citation omitted). Procedural unconscionability is generally found where there is a contract of adhesion. *Uddin v. Sears, Roebuck & Co.*, No. 13-6504, 2014 WL 1310292, at *7 (D.N.J. Mar. 31, 2014) (citation omitted).

"The essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the adhering party to negotiate except perhaps on a few particulars." *Id.* (quoting *Muhammed v. Cty. Bank of Rehoboth Beach Del.*, 912 A.2d 88, 96 (N.J. 2014)). In evaluating whether a contract of adhesion is procedurally unconscionable, a court must look "not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering party', and (4) the public interests affected by the contract." *Muhammed*, 912 A.2d at 97.

Here, Plaintiff argues the Arbitration Provision was a contract of adhesion, rendering Plaintiff no meaningful choice and mandating acceptance of non-negotiable terms. (Pl.'s Opp'n Br. 10.) Not all contracts of adhesion, however, rise to the level of procedural unconscionability. Here, even assuming the SIP Agreement was presented on a "take-it-or-leave-it basis," Plaintiff was free to decline it and would not have suffered negative consequences as a result of his decision. (Waters Decl. ¶ 3.) Additionally, many cases in this district have enforced arbitration agreements when employees had an adequate opportunity to decline the arbitration provision. *See Contorno v. Wiline Networks, Inc.*, No. 07-5865, 2008 WL 1944825, at *4 (D.N.J. May 1, 2008) ("[T]he

9

Court finds that the arbitration clause was a form of a contract of adhesion but did not rise to the level of procedural unconscionability"); *see also Singh*, 235 F. Supp. 3d at 675 (compelling arbitration as the agreement was not an unconscionable contract of adhesion because plaintiff could decline the arbitration provision); *Essex*, 2017 WL 6000347, at *5 (enforcing an arbitration agreement against employees because they were not required to participate in the arbitration program as a condition of employment with employer).

### C.   Whether the Arbitration Provision is Substantively Unconscionable

Substantive unconscionability is another contractual defense that may render an agreement unenforceable. *Nino v. Jewelry Exch. Inc.*, 609 F.3d 191, 201 (3d Cir. 2010). Substantive unconscionability looks to whether the arbitration provision unreasonably favors the party asserting it. *Zimmer*, 523 F.3d at 228.

Here, Plaintiff sets forth two arguments to suggest the Arbitration Provision is substantively unconscionable. (Pl.'s Opp'n Br. 10-11.) First, Plaintiff argues the Arbitration Provision mandates submission of Plaintiff's claims to an inherently unfair and biased arbitral forum. (*Id.* at 11.) The Supreme Court has repeatedly rejected this idea, most notably in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991), stating, "[W]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." Additionally, in *Rodriguez de Quijas v. Shearson Exp., Inc.*, 490 U.S. 477, 481 (1989), the Supreme Court noted generalized attacks on arbitration were "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." Given the strong precedent favoring arbitration, the Court declines to entertain Plaintiff's arguments pertaining to bias.

Second, Plaintiff argues the Discovery Provision is severely limiting and therefore unconscionable. (Pl.'s Opp'n Br. 15-17.) Plaintiff further claims that because the Arbitration

10

Provision as a whole is unconscionable, the Court may not sever the unconscionable Discovery Provision. (*Id.*) As discussed above, Plaintiff's argument that the Arbitration Provision as a whole is unconscionable lacks merit. The Court, however, may consider whether the Discovery Provision is unconscionable and, if so, whether the Court should sever that provision or void the entire Arbitration Provision.

Courts have the ability to sever unconscionable provisions from arbitration agreements so long as the agreement as a whole is not unconscionable. *Delta Funding Corp. v Harris*, 912 A.2d 104, 124 (N.J. 2006). Further, limited discovery provisions are permissible so long as they are not so restrictive that it will prove insufficient to allow plaintiff fair opportunity to present his or her claims. *Gilmer*, 500 U.S. at 29.

Here, the Discovery Provision limits the parties to taking only one deposition (but allows unlimited expert witness depositions) unless the arbitrator finds that additional discovery is "necessary." (SIP Agreement.) Courts have differing views on whether such a restriction—*i.e.*, allowing only one deposition—is unconscionable. In *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 545 (E.D. Pa. 2006), the court found that a discovery provision that allowed only the depositions of experts more restrictive than the provision the Supreme Court analyzed in *Gilmer*, and therefore put the plaintiff at such a "distinct disadvantage in arbitration" that it "may well deny [the plaintiff] of the fair opportunity to present her claims." *Id.* (internal quotation marks and alteration omitted) (quoting *Gilmer*, 500 U.S. at 31). In *Nascimento v. Anheuser-Busch Cos.*, No. 15-2017, 2016 WL 4472955, at *5 (D.N.J. Aug. 24, 2016), however, the court found a discovery provision that limited discovery to ten interrogatories, two fact witness depositions and all expert witnesses was not overly restrictive because the plaintiffs failed to "explain how [those] provisions, apart from limiting discovery, deprive[d] them of a fair opportunity to present their claims." *Id.* at *5; *but see Estate of Anna Ruszala, ex re. Mizerak v. Brookdale Living Cmts., Inc.*,

11

1 A.3d 806, 821 (N.J. Super. Ct. App. Div. 2010) (holding discovery provisions that did not allow nursing home residents to depose any nursing home staff involved in their day-to-day care "palpably egregious because they are clearly intended to thwart [the] plaintiffs' ability to prosecute a case involving resident abuse"). Persuasively, the Third Circuit has held that "[i]t is well recognized that discovery generally is more limited in arbitration than in litigation . . . and that, as an important counterweight, . . . arbitrators are not bound by the rules of evidence . . . . Consequently, a party's evidentiary and discovery needs will be substantially different depending on whether a case is to be litigated or arbitrated." *Nino*, 609 F.3d at 211 n.9.

Here, the Discovery Provision is less severe than the provisions the District of New Jersey and New Jersey Superior Court, Appellate Division, have found unconscionable. The Discovery Provision is not overly restrictive because the Discovery Provision authorizes the arbitrator to permit further discovery and that authorization is not tied to an impossibly high burden. *Styczynski v. Market Source, Inc.*, 340 F. Supp. 3d 534, 543 (E.D. Pa. 2018) (finding that discovery provision was not substantively unconscionable even though it limited the parties to only one deposition because the arbitrator had the authority to expand discovery).

Moreover, Plaintiff does not make any specific arguments as to why the Discovery Provision impairs his ability to fairly litigate his case. Rather, Plaintiff merely states that discovery is particularly important in the employment discrimination context. Such contentions, however, are insufficient. *See, e.g.*, *Gilmer*, 500 U.S. at 31. The Court, accordingly, finds the instant Discovery Provision is not substantively unconscionable.

## V. Conclusion

For the reasons set forth above, it is hereby ordered that Defendants' Motion to Compel Arbitration is granted. The Court will issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 31, 2019